735 So.2d 659 (1998)
Abner TRITT and Claire Tritt
v.
Donald J. GARES, Jr., Eli J. Skora, and United Media Corporation.
No. 98-CA-0704.
Court of Appeal of Louisiana, Fourth Circuit.
December 23, 1998.
*660 Leslie A. Lanusse, Lisa Lemaire Maher, Janis Van Meerveld, Adams and Reese, New Orleans, for Defendant-Appellee.
Barkley & Thompson, Robert E. Barkley, Jr., Jan K. Frankowski, New Orleans, for Plaintiffs-Appellants.
Before KLEES, BYRNES and ARMSTRONG, JJ.
BYRNES, Judge.
The plaintiffs-appellants, Abner and Claire Tritt, appeal a partial summary judgment dismissal of their claims against Eli Skora rendered on July 21, 1997, and the judgment dated October 21, 1997 denying their motion for a new trial.
The plaintiffs' original petition for injunctive relief and damages dated November 2, 1995, was filed against Donald J. Gares, Jr., Eli J. Skora (the appellant herein) and United Media Corporation ("UMC"), the company set up by Gares to publish the newspaper. The Tritts filed a separate claim against the Jewish Federation of Greater New Orleans of which Skora was the director.
The Tritts contracted with the Jewish Federation of Greater New Orleans to produce and publish the Jewish Voice which targeted the local Jewish community. The defendant Donald Gares was employed by the Tritts as a sales manager.
Subsequently, Gares left the Tritts and founded his own newspaper to the detriment of that of the Tritts. The Tritts' petition accuses Gares of disloyalty and the misappropriation of confidential business information. The petition accuses Skora of assisting Gares. The Tritts allege that Gares breached a duty owed to them. No similar allegation is made concerning the actions of Skora.
*661 On April 4, 1996, Skora filed a motion for summary judgment asking that the suit be dismissed insofar as it pertained to him.
On August 26, 1996, the Tritts filed an amended petition alleging that Skora was aware of Gares' actions, that Skora had an obligation and duty of good faith and fair dealing, and that Skora breach that obligation and duty. On October 15, 1996, Skora filed a motion to consolidate the separate suit against the Jewish Federation with the one naming him as one of several defendants. The trial court signed the consolidation order the next day.
As mentioned at the outset, on July 21, 1997, the trial court granted Skora's motion for summary judgment and dismissed the Tritts' claims against him. As also mentioned above, on October 21, 1997, the trial court denied the Tritts' motion for a new trial.
Skora filed a motion for summary judgment and in connection therewith offered the affidavits of Skora, Roberta Brunstetter and Carol Wise along with attached documentation exonerating Skora of the allegations against him. The Tritts opposition to Skora's motion for summary judgment offered a copy of the original 1989 agreement between Abner Tritt and the Jewish Federation of Greater New Orleans which expired by its own terms on June 30, 1990. It appears from the record that the relationship between Abner Tritt and the Jewish Federation continued thereafter on an oral basis, the precise terms of which cannot be determined from the record at this stage of the proceedings. There is no documentation of any direct relationship between the Tritts and Skora.
The Tritts' opposition also offered a copy of the agreement between the Jewish Federation and United Media Corporation, Gares company whereby UMC supplanted the Tritts as the publisher of the Jewish Federation newspaper. In addition, the Tritts' opposition also contained very limited excerpts from the depositions of Skora and Gares and an affidavit of Carol Insley. Of all of these documents, the only one tending to support the Tritts' allegations against Skora is the Insley affidavit.
The most significant issue raised by the plaintiffs in this appeal is whether the trial court erred in excluding the affidavit of Carol Insley. The defendant, Eli J. Skora, objected to the use of the affidavit on the grounds that it did not represent Ms. Insley's personal knowledge of Skora's alleged actions which form the substance of the plaintiffs' allegations of conspiracy against Skora. Insley's affidavit makes the following references to the appellee, Eli Skora:
5. .... Gares told me that Roberta set up a meeting with Eli J. Skora, Executive Director of the Federation, for Gares to present his proposal to publish the Jewish newspaper for the Federation. Gares told me that the Federation no longer wanted Mr. Tritt to publish the Federation's newspaper and that Mr. Skora was very receptive to Gares' proposal to be the publisher of the Federation's newspaper.
6. Within a month after telling me that he had leased premises for his Jewish newspaper, Gares told me that he cancelled that lease because Eli wanted him to be in the same building as the Federation. Gares also told me that Mr. Skora wanted Gares to have a Jewish backer for his newspaper and that Mr. Skora arranged introductions for Gares with three potential Jewish backers who were prominent in the Jewish community.
7. Gares told me that [he had taken copies of all of the business records of Mr. Tritt pertaining to the Jewish voice] because Eli, Roberta and the Federation asked him to obtain all of Mr. Tritt's income and expense information as well as a list of all of Mr. Tritt's employees who would be going to work for Gares.
12. Gares told me that the Federation assisted him in starting his Jewish newspaper for the Federation and *662 that Mr. Skora said Gares could have the Federation's old phone system and that the Federation would provide Gares the composition equipment for the newspaper.
Skora objects to all of these statements found in Insley's affidavit because they were all based on Gares' knowledge, not Insley's personal knowledge. LSA-C.C.P. art. 967 requires that "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Skora also objects to the statements, contending that they are inadmissible hearsay. In his written reasons for judgment the trial judge stated that he rejected Insley's allegations (at least insofar as they pertain to Skora) because they are not based on personal knowledge.
The trial judge reiterated this finding in his written reasons issued in connection with his judgment denying plaintiffs' Motion for New Trial. At the same time he addressed plaintiffs' argument that Insley's statement based on what Gares told her were was not hearsay pursuant to an exception to the hearsay rules established by LSA-C.E. art 801D (3)(b). This statute declares that the following is not hearsay:
A statement by a declarant while participating in a conspiracy to commit a crime or civil wrong and in furtherance of the objective of the conspiracy, provided that a prime facie case of conspiracy is established.
The trial judge found that the only evidence in the record from which he could arguably infer the existence of the alleged conspiracy involving Skora are the second hand statements made by Insley in her affidavit. Skora contends that plaintiffs must first establish a prima facie case of conspiracy before LSA-C.E. 801D(3)(b) may be invoked. Plaintiffs counter that the statements found in the affidavit may themselves be used to establish the prima facie case of conspiracy. Skora argues that this would permit the plaintiffs to pull themselves up by their bootstraps. In State v. Lobato, 603 So.2d 739, 746 (La. 1992) the court said that:
Statements made by co-conspirators which are the object of defense counsel's hearsay objection may be considered by the trial court in making its determination as to whether a prima facie case of conspiracy has been established. State v. Martin[Myers], 545 So.2d 981, 985 (La.1989).
But in State v. Lobato there was substantial other evidence of the conspiracy:
Cannon testified as to statements made by defendant prior to his cooperation which indicated his knowledge of and participation in the conspiracy. The gas receipt showing defendant had been in Monroe the day prior to his arrest, Phillips' business card, the empty suitcase with marijuana gleanings and the $18,000 cash packaged in small bundles all tended to show the existence of the conspiracy. Veazey's testimony supported the existence of the conspiracy. The recorded conversations themselves also indicated defendant's knowledge of and participation in the conspiracy.
Lobato, 603 So.2d at 747.
Plaintiffs argument would be stronger, if they were able to produce a recording of what Gares said along with other objective evidence as was done in Lobato. State v. Ellis, 94-599, p. 18 (La.App. 5 Cir. 5/30/95); 657 So.2d 341, 351, writ denied 95-2095 (La.12/8/95); 664 So.2d 421, and writ denied by 95-1639 (La.1/5/96); 666 So.2d 300, also cited by the plaintiffs, fails to support the plaintiffs contention that the Insley affidavit alone is sufficient to establish a prima facie case of conspiracy:
In the instant case, the evidence the state presented to prove the admissibility of the hearsay statements was substantially greater than was the case in State v. Meyers[Myers], supra. The state offered the testimony of Lt. Daniel Samrow, who had extensive knowledge *663 of the entire police investigation leading up to Ellis' arrest. The state also offered transcripts of video and audio recordings of discussions between the co-conspirators Kennair and the confidential informant "Rocky" Richard, during which the two discussed murder plans in detail. The most telling evidence, as far as Ellis' case is concerned, was the transcript of the recording of Ellis' meeting with Kennair on September 28, 1993. The two openly discussed the plot to murder Dr. Barton and Dr. Protti, and their plans to accomplish that objective.
In State v. Myers, 545 So.2d at 985, cited in the above two cases, the court sustained the trial courts finding that the statements of the two defendants were insufficient to establish a prima facie case of conspiracy. The court in Myers left the door open to the possibility that the hearsay declaration alone might be sufficient to establish a prima facie case of conspiracy. But to date, no Louisiana court has so held, and the Insley affidavit in the instant case does not make a convincing argument for establishing such a precedent.
Moreover, even had the plaintiffs established a prima facie case of conspiracy entitling them to take advantage of the LSA-C.E. 801D(3)(b) hearsay exception regarding conspiracy at a trial on the merits, that does not necessarily mean that the hearsay exception applies on a motion for summary judgement. LSA-C.C.P. art. 967 uses the conjunctive in requiring that the evidence offered in support of or in opposition to a motion for summary judgment be not only admissible, but it must also affirmatively show that the affiant is competent to testify to matters stated in the affidavit, and, more significantly, it must be made "on personal knowledge." Plotkin, Louisiana Civil Procedure, Article 967, Requirements for Affidavits, Section 1. Therefore, the fact that evidence may be admissible is not the same as saying that it is made based on personal knowledge and is not sufficient in itself to satisfy the LSA-C.C.P. art. 967 personal knowledge requirement. "regarding the use of affidavits, the requirement of La. C.C.P. Art. 967 that `affidavits shall be made on personal knowledge' had been strictly enforced; ..." Express Publishing Company, Inc. v. Giani Investment Company, Inc., 449 So.2d 145, 146 (La.App. 4 Cir.1984). Had it been the intention of the legislature to allow all admissible exceptions to the hearsay prohibitions, the first sentence of LSA-C.C.P. art. 967 would have made no reference to personal knowledge and might have read, "Supporting and opposing affidavits shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the maters stated therein." The additional phrase "shall be made on personal knowledge" would not have been included. However, since it was included we must give effect to it where the language is clear, consistent, and leads to no absurd consequences. The plaintiffs have offered no argument and cited no authority that would give us a reason to ignore the plain language of the statute requiring personal knowledge. None of the hearsay exception cases cited by the plaintiffs are summary judgment cases.
Personal knowledge encompasses only those facts which the affiant saw, heard or perceived with his own senses. Id. at p. 147. See also Roberts v. Orpheum, 630 So.2d 914 (La.App. 4 Cir.1993) and O'Dell v. Deich, 496 So.2d 1074 (La. App. 4 Cir.1986). We cannot use a purported search for legislative intent as a pretext to ignore the clear and unambiguous requirement that summary judgment affidavits be based on personal knowledge. LSA-C.C. art. 9. This is even more true today where the legislature has declared that summary judgments are favored. Were we to dilute the requirement that affidavits be based on personal knowledge, it should be all to easy to come up with hearsay affidavits effectively undermining the entire summary judgment process.
*664 At the time the trial court originally granted Skora's motion for summary judgment, the only evidence before the court that would support the Tritts' allegations of conspiracy was the Insley affidavit. As we have found that the evidence of conspiracy against Skora contained in that affidavit was properly rejected from consideration by the trial, we find no error in this initial trial court judgment.
However, the Tritts moved for a new trial and in doing so sought to introduce additional evidence, more particularly certain deposition testimony. The trial court found that none of the additional evidence that the Tritts sought to introduce in connection with their motion for new trial was evidence discovered since the trial as required by LSA-C.C.P. art. 1972(2). All of the additional evidence was available to the Tritts long before the motion for summary judgment was tried. There is no merit to the Tritts argument on this point.
The Tritts also contend that the granting of the motion for summary judgment is an interlocutory order. The Tritts note that LSA-C.C.P. art. 1915B(2) says in pertinent part that, "Any such order or decision issued may be reviewed at any time prior to the rendition of the judgment adjudicating all the claims and the rights and liabilities of all the parties." This language is permissive and does not constitute a mandate. We find no abuse of the trial court's discretion in finding that the Tritts had adequate opportunity to introduce available evidence at the time of the original hearing.
The granting of the summary judgment dismissing Skora from this suit would have been a final judgment prior to the effective date of Act 483 of 1997. Even after Act 483 of 1997 such a summary judgment still a decision on the merits as to Skora in spite of the fact that it is no longer considered final in the absence of a certification of finality. A decision denying a motion for summary judgment is not a decision on the merits. It is expected that additional evidence will be developed following the denial of a motion for summary judgment, whereas when a party is dismissed that party should not expect to have to retry the motion an unlimited number of times for the introduction of previously available evidence. That is not to say that if evidence comes out at a trial on the merits that would indicate that the original partial dismissal was wrong that the trial judge may not at that time take advantage of the fact that the judgment is not considered final to correct his error. Therefore, although partial judgments both granting and denying summary judgment may now both be considered interlocutory if not certified as final, the exercise of the discretion of the trial court on the question of whether additional evidence should be admitted is not the same where a party has been dismissed as it will be when the request of a party to be dismissed is denied.
Moreover, pursuant to a joint motion of the parties, this court remanded this case to the trial court for a certification of finality in accordance with Act 483 of 1997. On May 11, 1998, the trial court rendered an "Amended Judgment" decreeing that:
IT IS HEREBY ORDERED, ADJUDGED and DECREED that the joint motion and Incorporated Memorandum to Certify Judgment as Final, is hereby granted and that all claims alleged in plaintiffs' Petition and Amended against Eli J. Skora are hereby dismissed with prejudice. This judgment is entered nunc pro tunc, [emphasis added] as if it had been entered the date of the original judgment, and does not constitute a new judgment.
This amended judgment was rendered at the joint request of both parties. It is a final judgment, not an interlocutory order. The Tritts do not complain about the declaration of retroactivity contained in the judgment. Moreover, as certification of finality is a procedural device we find that it would be retroactive in its *665 effect by operation of law. The original partial summary judgment is now a final appealable judgment from the day it was rendered. (However, for obvious reasons the appeal period cannot commence to run until the judgment is certified as final.) Therefore, to the extent that the Tritts' appeal on the question of introducing additional evidence depends on establishing the interlocutory nature of the partial summary judgment, it is without foundation.
For the foregoing reasons the, the judgments below are affirmed.
AFFIRMED.