hBYRNES, Judge.
Douglas Price, the defendant-third-party-plaintiff-respondent, seeks insurance coverage from its insurer, the relator-third-party-defendant, Southern Fire Insurance Company, in connection with an automobile collision. Relator, Southern Fire, moved for summary judgment, alleging that the policy in question had been cancelled prior to the accident. The trial court denied relator’s motion and the relator then applied to this court for supervisory writs.
It is undisputed that on October 2, 1996, the defendant-third-party-plaintiff-respondent, Douglas Price applied for insurance at Agency Risk Management Corporation. On October 27, relator-third-party-defendant, Southern Fire Insurance Company issued Price a policy of automobile liability insurance. Agency Risk Management financed a portion of the premium for Price. Subsequently, Southern Fire determined that $28.00 was due in addition to the amount of premium initially remitted, allegedly for undisclosed traffic violations.
On November 18, 1996, Southern Fire contends that it mailed a notice of cancellation for non-payment of the $28.00 to become effective November 29, 1996, if Southern did not receive the additional $28.00 prior to that date. It is undisputed that the additional $28.00 was not remitted to Southern Fire. Accordingly, the policy was cancelled in accordance with the terms of the notice.
ROn December 5, 1996, Southern Fire mailed Price and Agency Risk a Notice of Final Cancellation. Southern Fire characterizes this second notice as a “courtesy” because it is not required by the statutory law relating to the cancellation of insurance policies.
Shortly thereafter, Price was involved in an automobile accident with the original plaintiff, Warren Delcambre. Delcambre was insured by State Farm Mutual Automobile Casualty Company. Delcambre and State Farm instituted this litigation against Price. Price filed an answer and third party demand alleging that the accident was caused entirely by Delcambre’s negligence and naming Southern Fire as a third party defendant, claiming that Southern Fire is obligated to defend and indemnify Price.
Annexed to relator’s writ application is a copy of its submission below, including a properly identified and attested notice of cancellation of the policy. Both the reason for cancellation and the timeliness of the notice pursuant to the requirements of LSA-R.S. 22:636.1 appear on the face of the notice. Also annexed and submitted below is a properly identified and attested proof of timely mailing to the respondent, Douglas O. Price.
In his opposition below, the respondent offered a copy of a “Notice of Final Cancellation” which is not properly sworn to or certified as required by LSA-C.C.P. art. 967, in support of the proposition that the notice was untimely. However, even had this document been properly attested as required by summary judgment procedure, on its face it fails to support the proposition for which it is offered. It is not the notice of cancellation required by LSA-R.S. 23:636.1 to be issued prior to cancellation, but is a second and subsequent notice *595 characterized by relator as a courtesy to inform the insured of the cancellation as an accomplished | ¡¡fact. There are no statutory requirements concerning such a notice. Therefore, the timing of it is irrelevant.
Consequently, the face of relator’s writ application raises serious issues not properly countered by the face of respondent’s opposition. As the reversal of the decision of the trial court would result in the termination of this litigation as to Southern Fire, this Court was initially of the opinion that the writ application merited full consideration by this Court, and, accordingly granted the writ. However, after reviewing the record in depth, we deny the requested relief and affirm the judgment below.
The crux of this case is to be found in the affidavit of Barry C. Prine and its attachments. In his affidavit, Prine swears that he is relator’s Staff Counsel and authorized representative and that pursuant to his search of relator’s business records he found a notice of cancellation of Prine’s insurance policy issued by relator along with a proof of mailing.
Because we review summary judgments de novo, we must first examine the legal sufficiency of Prine’s affidavit and attachments.
In Tritt v. Gares, 98-CA-0704 (La.App. 4 Cir. 12/23/98); 735 So.2d 659, this Court stated that:
LSA-C.C.P. art. 967 uses the conjunctive in requiring that the evidence offered in support of or in opposition to a motion for summary judgment be not only admissible, but it must also affirmatively show that the affiant is competent to testify to matters stated in the affidavit, and more significantly, it must be made “on personal knowledge.” Plot-kin, Louisiana Civil Procedure, Article 967, Requirements for Affidavits, Section 1. Therefore, the fact that evidence may be admissible is not the same as saying that it is made based on personal knowledge and is not sufficient in itself to satisfy the LSA-C.C.P. art. 967 personal knowledge requirement. “Regarding the use of affidavits, the requirement of La.C.C.P. Art. R967 that ‘affidavits shall be made on personal knowledge’ has been strictly enforced;
[[Image here]]
Personal knowledge encompasses only those facts which the affiant saw, heard or perceived with his own senses.
Superficially, it would seem at first glance that the attachments to Prine’s affidavit, although admissible under the business records exception to the hearsay rule (LSA-C.E. art. 803(6)), would not satisfy the personal knowledge requirement of LSA-C.C.P. art. 967 as discussed in Tritt, supra. However, where business records are concerned, the courts have deemed it sufficient that the affiant be qualified to identify the business records as such. The affiant has not been required to show that he personally prepared the business records, or that he had direct, independent, first hand knowledge of the contents thereof. Brown v. Adolph, 96-1257 (La.App. 1 Cir. 3/27/97); 691 So.2d 1321. See also Whitney Nat. Bank v. Reliable Mailing, 96-968 (La.App. 5 Cir. 4/9/97); 694 So.2d 479, where it is implicit that a bank officer was identifying mortgage payment records of the bank when it is reasonable to assume that such an officer of a large bank would not have handled such payments directly and personally. The practical wisdom of this approach is especially easy to appreciate in litigation involving long running account relationships where it would not normally be practical or necessary to require every one of possibly numerous employees to personally attest to each entry on the account. Although the wisdom of the business records doctrine is easiest to see in connection with accounts of long standing, it is equally applicable to business records in general. Accordingly, in the absence of a challenge from the respondent to the competency of Prine, we *596 find that he is competent to identify relator’s business records.
| ¡¡Relator contends that respondent’s insurance was cancelled for failure to pay $28.00 in premium in addition to the sum in excess of $1000.00 already paid. Relator’s writ application argues that it required the additional $28.00 based on “undisclosed speeding tickets” found in respondent’s driving record. Although Prine in his affidavit states that it is based on personal knowledge, his affidavit also states that it is based on his search of Southern Fire’s business records. As Prine in the preamble to his affidavit describes himself as Staff Counsel and authorized agent for Southern Fire and that the affidavit is confected pursuant to his search of Southern Fire’s business records, it is reasonable to infer that his personal knowledge is really personal examination of business records after the fact, rather than firsthand, contemporaneous involvement with Price’s insurance policy.
Prine states in his affidavit:
That upon examination of Price’s driving record, [Southern Fire] determined that Price owed an additional premium of $28.00.
We must infer that this statement is based on Prine’s examination of Southern Fire’s business records rather than on his personal handling of Price’s account. As such, Prine may be qualified to identify and explain those records as discussed earlier, but may not offer affidavit testimony concerning what is in Southern Fire’s records in the absence of those records, unless he has actual firsthand knowledge. The only reasonable inference to be drawn from the record and Prine’s status as Staff Counsel is, as stated previously, that his knowledge is business records knowledge only. It is insufficient for an affiant to merely declare that he has personal knowledge of a fact. The affidavit must affirmatively establish that the affiant is competent to testify as to the matter by a factual averment showing how he came by the knowledge. Duplessis v. Warren Petroleum, Inc., 95-1794, p. 4-5 |6(La.App. 4 Cir. 3/27/96); 672 So.2d 1019, 1022; Barham & Churchill v. Campbell & Associates, 503 So.2d 576 (La.App. 4 Cir.1987), writ denied, 503 So.2d 1018 (La.1987). Prine does not assert or imply that he personally handled Price’s insurance account during the time this premium issue arose. Therefore, for this Court to give any consideration to Prine’s affidavit statement that Southern Fire determined that an additional $28.00 was due based on an examination of Price’s driving record, it must be supported by business records of Southern Fire, identified by Prine in his affidavit, or independently of Prine’s affidavit by other evidence properly before the court on summary judgment. It is not reasonable to conclude that Prine would have any personal firsthand knowledge of the $28.00 claim for additional premium other than knowledge he acquired from the review of business records. Accordingly, if we are to credit Southern Fire’s claim for an additional $28.00 in premium, it must be established in the record through business records annexed to Prine’s affidavit, or through other evidence outside of that affidavit. In other words, it is through the annexed business records that the entitlement to the $28.00 must be established, not through the conclusory language found in the body of the affidavit itself.
We have carefully examined the records furnished by relator in connection with its writ application. The only reference to $28.00 is found in the Notice of Cancellation dated November 18, 1996, and no reason is given for that amount. The Notice of Final Cancellation found among the documents offered by Southern Fire refers to an earned premium of $104.00 which is not to be refunded, and an unearned premium of $1046.00 which is to be refunded. From the claim for an earned premium of $104.00 it is obvious that relator considered the policy to be [7effective for some period of time. There is no reference to *597 the $28.00 in the Notice of Final Cancellation.
In its writ application, relator admits that it issued the policy on October 27, 1996. Where, as in the instant case, the policy is cancelled for the non-payment of an amount that is minimal relative to the total premium, and which amount was determined unilaterally to be due by the insurer only subsequent to the issuance of the policy and payment by the insured in full of the premium he was informed was sufficient, the burden is on the relator to substantiate the claim for the additional amount. Such proof is likely to be more complicated than the relatively simple situations in which the insured fails to remit any portion of the premium or a regular periodic payment thereon and the explanation for the amount claimed is fully and adequately described by a notice stating simply that the premium has not .been paid. To put it another way, where the respondent has every reason to believe that the premium has been paid, and the initially determined premium has in fact been paid and the policy issued, the burden should be on the insurer to show that an additional amount is due and how it made that determination.
Among the documents furnished to this Court by relator is one entitled:
-APPLICATION-
October 2, 1996
This document lists three “ACCIDENTS/VIOLATIONS.” From the face of this document one would conclude that this information was disclosed as part of the application. Relator has not suggested or contended otherwise. If this is the case, there can be no additional premium due for the failure to disclose these items. If the failure to disclose is in connection with other speeding tickets not referred to on the face of the application form, there is no evidence of that fact in the record. |RIf the three items shown on the “APPLICATION” were discovered at some date subsequent to the date shown on the application and added to the application form only at that later date, the burden is on Southern Fire to demonstrate this, as it is contrary to what one would ordinarily assume from the face of the document. Southern Fire has offered no explanation of its own exhibit in this regard — which brings us back to the unsubstantiated, conclusory allegation that an additional $28.00 was due in connection with undisclosed speeding tickets.
Where, as in the instant case, the burden is on the moving party to prove nonpayment of the amount claimed, the adequacy of a notice of cancellation for nonpayment of premium does not become an issue until that burden is met. Southern Fire offers us nothing on which to base a finding that Price owed an additional $28.00. Unless and until relator substantiates its entitlement to an additional $28.00, respondent has no need to show that the mailing, delivery, or contents of the notice of cancellation was legally insufficient.
Likewise, although it is true that the respondent’s opposition in the trial court contained allegations[1] and a document unsubstantiated by affidavit[2], we do not reach the deficiencies of the party opposing summary judgment, in this case the respondent, until the moving party first bears its burden. As Southern Fire has failed to carry its initial burden, as required by LSA-C.C.P. art. 967, of substantiating its assertion that an additional $28.00 was due by Price based upon undisclosed driving transgressions, the deficien *598 cies of the respondent’s opposition | gregarding receipt of notice of cancellation are irrelevant. Accordingly, we affirm the judgment of the trial court.
WRIT GRANTED; RELIEF DENIED; JUDGMENT AFFIRMED.

. For this Court to seriously consider any allegation on summary judgment, it must be in affidavit form. LSA-C.C.P. art. 967. Argument of counsel, which includes memoran-da submitted in support of or in opposition to a motion for summary judgment, is not evidence, no matter how artful and persuasive.

. LSA-C.C.P. art. 967 requires that: "Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." [Emphasis added.]