PITMAN, J.
| T Defendant Diamond Construction, Incorporated (“DCI”), appeals a judgment of the trial court granting a motion for summary judgment filed by Tim Barfield, former Secretary of the Louisiana Department of Revenue (“the State”), which found that DCI was liable to the State for past due sales and use taxes for the taxable period of January 2009 through De *1212 cember 2011 (“the taxable period”), plus applicable penalties, interest and attorney fees. For the following reasons, we affirm the judgment of the trial court.
FACTS
A petition for collection of taxes was filed by the State against DCI alleging that it had transacted business in Louisiana, earned income attributable to Louisiana and subjected itself to Louisiana tax law. The State alleged that, during the taxable period, DCI was required to collect and remit to it Louisiana sales and use taxes. The State conducted a sales and use tax examination and audit for the taxable period and found that DCI was a construction business that performed various services and sold equipment, which resulted in taxable transactions, including, but not limited to, welding, fabrication, repairs, rentals, gate guards and hauling. DCI was not registered for Louisiana general sales tax during the taxable period.
The State alleged that there were taxable sales for which DCI failed to charge Louisiana state sales tax and that it had failed to provide any information demonstrating that the additional sales or the customer were exempt from the imposition of sales tax. These taxes were calculated to be $364,045.59. The State further alleged that, while DCI did charge some sales taxes to customers, it failed to remit those taxes. It calculated that claim to be in the amount of $9,773.77, plus interest and penalties. It | ^claimed that the facts alleged were prima facie true and constituted a prima facie case and that the burden of proof to establish anything to the contrary rested on DCI in accordance with La. R.S. 13:5034 et seq. The total of these taxes is $373,819.26.
The State also alleged that it had correctly computed the tax, penalty and interest due from DCI in accordance with the statutes and regulations, and the audit revealed that sales tax was due and owing. It claimed the total amount due was $524,786.47, which included sales tax in the amount of $373,819.26, interest calculated to December 31, 2013, in the amount of $78,726.27, and a penalty amount of $72,240.84.
DCI filed a general denial to all of the allegations and only responded to paragraph 16 of the State’s petition, which alleged that it had issued a notice of proposed tax due to DCI on June 28, 2013. DCI’s response to that allegation was that it had forwarded the information to its accountant, Marty Estep, who was to review the documents, gather information and report his findings to DCI; however, Mr. Estep never complied with the request.
On April 25, 2015, the State filed a motion for summary judgment, arguing there were no genuine issues of material fact remaining for trial since DCI was unable to carry its burden of disproving the allegations in its petition for collection of taxes, which were treated as prima facie true under La. R.S. 13:5034 et seq. It claimed that DCI, in its answer and discovery responses, had admitted all material facts required for a judgment to be rendered in the State’s favor, and it attached its interrogatories, requests for production and DCI’s responses. It also attached its request for admission of fact; the second set of requests for admission of fact; the affidavit of |sKenneth Foster, revenue agent for the State, who performed the audit; and several other attachments.
DCI filed a memorandum in opposition to the motion for summary judgment and claimed that genuine issues of material fact remained which made summary judgment inappropriate. The memorandum indicated that it filed affidavits from two of its largest customers, La-Tex Pump and Transportation (by owner Thomas Smith) *1213 and Nabors Industries, Ltd. (by drilling superintendent Michael Olivo), which provided sworn testimony that DCI performed services for each of them during the years 2009, 2010 and 2011 and that a portion of that work was performed in Texas. DCI also filed affidavits of its president, Robert Haynes, and financial advis- or, Don G. McCullough, who was specifically contracted to work on the case.
Both the Haynes and McCullough affidavits assert that a portion of the taxes sought by the State were improper because the services being taxed were 1) performed outside of Louisiana’s taxable jurisdiction; 2) the services were outside of the scope of Louisiana’s sales and use tax; 3) many invoices subject to the audit were sent to customers outside of Louisiana; 4) a quality investigation thereof would undoubtedly show that a large portion of those invoices were requesting payment for services performed out-of-state; and 5) such proof could be made available through the testimony of customers to whom services and materials were provided and through officers of DCI.
The opposition memorandum also listed statements of disputed material facts, including that Mr. Foster disregarded and ignored his personal knowledge that some of the companies doing business with DCI accrued their taxes, failed to distinguish between exempt and non-exempt companies and failed to exclude out-of-state transactions. DCI claimed that, |4as a result of these failures, Mr. Foster did not establish reasonable controls on the audit and that the audit findings contained in the notice of proposed taxes due are inaccurate and incorrect due to the State’s failure to distinguish between in-state and out-of-state transactions.
DCI contended that the affidavit of its financial consultant avers that 48 percent of all transactions were for materials and services performed outside of Louisiana, making those transactions exempt from sales and use tax. It also contended that, since those figures which detail the principal amount of taxes due are in dispute, the interest and penalty calculations, which are based on the principal amount, are also in dispute. As a result of all these disputed facts, it claimed that the State is not entitled to summary judgment.
The trial court sent the attorneys a letter on October 19, 2015, indicating that it had received the memorandum in opposition to the motion for summary judgment and allowed the State to file a reply brief; however, the letter also stated that, in the interest of judicial economy, it would not take the matter under advisement, but, instead, would rule on the record in open court on November 24, 2015. It allowed counsel of record to be present, but stated it was unnecessary that they attend and that no additional argument would be accepted.
The State did file a reply brief and called DCI’s affidavits self-serving, conclu-sory and irrelevant unsupported statements concerning out-of-state sales in tax years not at issue in the matter. It argued that DCI failed to provide any evidence of the sales, their amounts, the dates they took place or that any sales and use taxes were paid in other states. It claimed that DCI failed to register or pay any sales and use taxes in the taxable period at issue. | Jt argued that the affidavits submitted by DCI were not adequate to meet its burden of proof, which had shifted to it under La. C.C.P. art. 967, and that, further, because DCI failed to keep records during the taxable period, it would be unable to meet its burden of disproving the State’s audit findings. It stated that it is the burden of the taxpayer to maintain sufficient records to demonstrate that taxable transactions are not subject to Louisiana sales and use tax. Therefore, because DCI did not main *1214 tain sufficient records, the State was required by law to make an estimate of the transactions subject to Louisiana sales and use taxes and that estimate shall be considered prima facie true. The burden to the contrary rests upon the taxpayer.
On November 24, 2015, the trial court reviewed the evidence and found that the affidavits prepared by DCI’s customers, while sworn, failed to specifically address the transactions that were alleged to have occurred outside Louisiana. It also found that, because the State’s allegations are considered prima facie true, the burden shifted to DCI to prove, by a preponderance of the evidence, that the taxes alleged were not owed. Further, while finding that DCI had not met its burden of proof, it granted DCI an additional 30 days to amend the affidavits to address the specific transactions and show proof of the taxes imposed or paid in Texas, stating that, if DCI failed to amend to show the specific transactions or show proof that the taxes were imposed and collected by Texas, it would grant the motion for summary judgment.
DCI filed supplemental affidavits and attached some evidence, i.e., spreadsheets or notations that purported to concern specific jobs on certain dates on various wells in Texas and a computer printout showing the total of the invoices. However, it failed to attach any documentation proving that | (¡taxes had been paid on the specific transactions it was referencing or that they had occurred outside Louisiana.
On January 5, 2016, the trial court gave oral reasons for judgment in open court and stated that DCI had several years to provide specific information as to the services it provided, the revenues it received and the taxes that were paid in other states for which they would be given a credit. It noted that DCI’s complaint that it had not had sufficient time to do so was without merit. It stated that DCI should have maintained better records and that there was not sufficient proof to show that the work was performed and the monies earned outside Louisiana. For these reasons, it found that DCI failed to meet its burden of proof and judgment was rendered in the State’s favor.
The trial court issued a written judgment stating that, after having considered the pleadings, the attachments and the arguments of counsel, for reasons orally assigned, it granted the State’s motion for summary judgment and found that DCI was liable to the State for past due sales and use taxes in the amount $373,819.26 arising from the taxable period of January 2009 through December 2011; $124,403.83 in interest accrued as ’ of September 29, 2015, as provided in La. R.S. 47:1601; penalties totaling $72,240.84 due pursuant to La. R.S. 47:1602; attorney fees in the amount of ten percent (10%) of the taxes, penalties and interest awarded as provided in La. R.S. 47:1512; and post-judgment interest at the rate provided in La. R.S. 47:1601.
DCI appeals the trial court’s judgment granting the motion for summary judgment.
^DISCUSSION
DCI argues that all of the issues it raised in response to the motion for summary judgment remain and that the affidavits it presented, along with supporting documents, show that genuine issues of material fact exist concerning the imposition of taxes not due, the amount of taxes actually due and the calculation of penalties and interest. In particular, DCI argues that its affidavit by Robert Haynes shows that, during the taxable period, the employees in charge of accounts receivable and bookkeeping were no longer employed by the company, which put it at a severe disadvantage of trying to locate and pro *1215 vide the court with evidence of nontaxable transactions. Nevertheless, it claims that it did provide sample invoices created in the normal course and scope of business that show a total of $200,112 in transactions that were performed or conducted out-of-state and not subject to Louisiana sales and use tax law.
DCI also argues that the affidavit of Don McCullough shows that he was contracted by DCI for the purpose of working on the State’s audit. He had worked ten years for the Recovery Review Group out of Baton Rouge and was very familiar with the audit procedure. He allegedly discovered that certain out-of-state transactions were erroneously included in the assessment and, by his calculations, approximately 47.96 percent of out-of-state transactions, by law, should not have been considered for the assessment of taxes by the State. Attached to his affidavit was a letter from Justin St. Julian of E.O.G. Resources (“EOG”) that was written in response to a sales and use tax question concerning an attached list of invoices from DCI to EOG. St. Julian’s letter stated that EOG had been audited by the Louisiana Department of Revenue for the period January 1, 2006, through | ^December 31, 2009, and that EOG accrued, reported and paid use tax on invoice numbers 14721, 15201 and 16541. Further, the letter stated that invoice numbers 14663, 16820 and 16821 “all reference flow lines. EOG has taken the position that flow lines are buried below ground and thus the services are performed to immovable property. This position has been won under audit.” The letter also stated that invoice number 144477 is a nontaxable hauling/transportation invoice. He calculated and declared in his affidavit that the maximum possible amount of taxes owed the State is no more than $147,596.26.
DCI points out that the affidavits of Thomas Smith and Michael Olivo both state that DCI was performing work outside Louisiana, in Texas, during the taxable period. It argues that the State is attempting to collect taxes on these monies already paid on invoices to other companies. Based on its affidavits and supporting documents, DCI contends that summary judgment is not appropriate in this case.
DCI states that it is aware the law requires the taxpayer to maintain sufficient records to demonstrate that taxable transactions are not subject to Louisiana sales and use tax, but argues that the State took the position that it was then required, by La. R.S. 47:309(A), to make an estimate of the amount of transactions subject to sales and use taxes which should then be considered prima facie true. It claims that a reading of that portion of the statute does not provide or authorize any estimate, nor does the word “estimate” appear in the law. Since the State’s ease relies on estimates, not actual numbers, it argues that the estimate should not be deemed prima facie true and that it should be given the benefit of the doubt, especially in circumstances concerning motions for summary judgment.
IflDCI contends that the affidavits and supporting invoices show that genuine issues of material fact remain and that summary judgment is not appropriate in this case. In support, it quotes the trial court’s reasons for judgment as follows (with emphasis added):
I understand that there is a lot of shifting around of employees and services. And companies open and close all the time and that it’s a very fluid business for not just its product but its companies; that Diamond Construction, Inc. should have done more to maintain records when you’re dealing with the kind of dollars that these companies deal *1216 with. Otherwise, there is no proof-there’s not, I should say, there’s not sufficient proof to show that these monies were or the work was performed out-of-state. The monies were received by Diamond Construction, Inc., and the taxes were paid either by the state of Texas by either income use or otherwise. And in so doing I believe that several of those jobs were done outside of the state of Louisiana, but there’s no proof that there were taxes paid that is required under the statute in order for Diamond Construction, Inc. to get credit for the taxes off of those revenues that were done outside of the state of Louisiana. Therefore, Diamond Construction, Inc., has failed to meet its burden to prove by preponderance of the evidence that it does not owe the taxes that are alleged to have been owed as a result of the audit from the Department-Louisiana Department of Revenue.
DCI argues that, even though the trial court found that there were jobs performed outside Louisiana, it also found that DCI had failed to provide the proof by a preponderance of the evidence that it did not owe the taxes; and, for that reason, it granted the State’s motion. DCI asserts that the trial court should not have granted the summary judgment since it expressed doubts regarding the validity of the evidence upon which the State relied and, instead, should have given DCI the right to prove its case at a trial on the merits.
The State argues that the trial court correctly granted its motion for summary judgment since it was DCI’s burden of proof to the contrary under La. R.S. 13:5084 and La. R.S. 47:307 and 309. It points out that the statute Incited by DCI regarding the requirement that it estimate the taxes due actually does contain those specific words and that the assessment is deemed prima facie true. The burden of proof shifted to DCI, but it submitted only conclusory affidavits and unverified attachments which cannot be used to satisfy its burden. It further argues that DCI presented only one argument in opposition to the motion for summary judgment, claiming that it had an unspecified amount of out-of-state sales during the taxable period which was not subject to Louisiana sales and use taxes. It contends that DCI failed to provide any evidence of these sales, their amounts, the dates they took place or that any sales and use taxes were paid in other states. Further, it argues that, to the extent possible, it identified the wells and rigs to which DCI’s work related and did not include transactions in its schedules that it determined were related to wells and rigs located outside Louisiana.
On appeal, a trial court’s ruling on a motion for summary judgment is reviewed pursuant to the de novo standard of review. Jones v. Estate of Santiago, 03-1424 (La. 4/14/04), 870 So.2d 1002; Henderson v. Union Pac. R.R., 41,596 (La. App. 2 Cir. 11/15/06), 942 So.2d 1259. Appellate courts review summary judgments under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Schroeder v. Board of Sup’rs of La. State Univ., 591 So.2d 342 (La. 1991); Lewis v. Coleman, 48,173 (La.App. 2 Cir. 6/26/13), 118 So.3d 492, writ denied, 13-1993 (La. 11/15/13), 125 So.3d 1108; Grant v. Sneed, 49,511 (La.App. 2 Cir. 11/19/14), 155 So.3d 61.
A motion for summary judgment shall be granted if the motion, memorandum and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of h daw. La. C.C.P. art. 966(A)(3). A fact is “material” when its existence or nonexistence may be essential *1217 to plaintiffs cause of action under the applicable theory of recovery. Facts are material if they potentially insure or preclude recovery, affect a litigant’s ultimate success or determine the outcome of the legal dispute. Smith v. Our Lady of the Lake Hosp., Inc., 93-2512 (La. 7/5/94), 639 So.2d 730; Estate of Levitz v. Broadway, 37,246 (La.App. 2 Cir. 5/14/03), 847 So.2d 170.
La. C.C.P, art. 966(D)(1) provides the general rule concerning the burden of proof for summary judgment and states in pertinent part as follows:
The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.
La. R.S. 13:5034, more specifically, concerns the burden of proof in a case by the state against a taxpayer and states as follows:
Whenever the pleadings filed on behalf of the state, or on behalf of any of its officers charged with the duty of collecting any tax, excise, license, interest, penalty or attorney’s fees, shall be accompanied by an affidavit of the officer or of one of his deputies or assistants, or of the counsel or attorney filing the same, that the facts as alleged are true to the best of the affiant’s knowledge or belief, all of the facts alleged in the pleadings shall be accepted as prima facie true and as constituting a prima facie case, and the burden of proof to establish anything to the contrary shall rest wholly on the defendant or opposing party.
Under Louisiana sales tax laws, all sales of tangible personal property are taxable unless a specific exemption or exclusion is applicable, See La. |12R.S. 47:301 and 302. All rentals or lease of tangible personal property are subject to sales and use tax unless a specific exemption of exclusion applies. All sales of specific services, including repairs of tangible personal property are subject to Louisiana sales and use tax unless a specific exemption or exclusion applies. La. R.S. 47:302.
La. R.S. 47:307(A) concerns the collector’s authority to determine the tax in certain cases and states in pertinent part as follows:
A. In the event any dealer fails to make a report and pay the tax as provided in this Chapter or in case the dealer makes a grossly incorrect report or a report that is false or fraudulent, the collector shall make an estimate of the retail sales of such dealer for the taxable period, of the gross proceeds from rentals or leases of tangible personal property by the dealer, or the cost price of all articles of tangible personal property imported by the dealer for use or consumption or distribution or storage to be used or consumed in this state, and of the gross, amounts paid or charged for services taxable; and it shall be the duty of the collector to assess and collect the tax together with any interest and penalty that may have accrued thereon, which assessment shall be considered prima facie correct and the burden to show the contrary shall rest upon the dealer. (Emphasis added.)
*1218 La. R.S. 47:309 concerns dealers’ obligation to keep records and states in pertinent part as follows:
A.(l) Every dealer required to make a report and pay any tax under this Chapter shall keep and preserve suitable records of the sales, purchases, or leases taxable under this Chapter, and such other books of accounts as may be necessary to determine the amount of tax due hereunder, and other information as may be required by the secretary; and each dealer shall secure, maintain and keep until the taxes to which they relate have prescribed, a complete record of tangible personal property received, used, sold at retail, distributed, or stored, leased or rented, within this state by the said dealer, together with invoices, bills of lading, and other pertinent records and papers as may be required by the secretary for the reasonable administration of this Chapter, and a complete record of all sales or purchases of services taxable under this Chapter until the taxes to which they relate have prescribed.
_b***
(3) The secretary is authorized to require all dealers who take deductions on their sales tax returns for total sales under the minimum taxable bracket prescribed by him pursuant to R.S. 47:304 to support their deductions by keeping written or printed detailed records of said sales in addition to their usual books and accounts.
All of DCI’s transactions are subject to taxation under La. R.S. 47:302. It was incumbent upon DCI to keep the records necessary for payment of these taxes due during the taxable period. Because the State could not determine from DCI’s records which transactions were taxable, it exercised its authority under La. R.S. 47:307 to audit the company and make an estimate of the amount of taxes along with penalty and interest amounts owed by the taxpayer. After the audit and the assessment by estimate, which is presumed to be prima facie true, the burden of proof shifted to DCI to contradict the prima facie showing made by the State.
We find that no genuine issues of material fact remain and that DCI failed to raise any facts which would potentially ensure or preclude recovery, affect the litigant’s ultimate success or determine the outcome of the legal dispute. DCI was given the opportunity over several years to produce the evidence it needed to rebut the State’s prima facie case, but, because of poor recordkeeping, was unable to do so. Its argument that the State’s auditor failed to distinguish between in-state and out-of-state sales or between exempt and non-exempt customers does not create any genuine issues of material fact because there was not sufficient proof to bolster that assertion.
For the foregoing reasons, we find no error in the judgment of the trial court granting the motion for summary judgment.
^CONCLUSION
The judgment of the trial court granting summary judgment in favor of the Louisiana Department of Revenue, State of Louisiana, and against Diamond Construction, Incorporated, for past due sales and use taxes in the amount of $373,819.26 arising from the taxable period of January 2009 through December 2011; $124,403.83 in interest accrued as of September 29, 2015, as provided in La. R.S. 47:1601; penalties totaling $72,240.84 due pursuant to La. R.S. 47:1602; attorney fees in the amount of ten percent (10%) of the taxes, penalties and interest awarded as provided in La. R.S. 47:1512; and post-judgment interest at the rate provided in La. R.S. 47:1601; is affirmed. Costs of appeal are assessed to *1219 Defendant Diamond Construction, Incorporated.
AFFIRMED.