WHIPPLE, C.J.
*20 This is an appeal from a grant of a motion for summary judgment in favor of plaintiff, Louisiana Workers' Compensation Corporation (LWCC), and against defendants, B, B & C Associates, L.L.C., d/b/a Coleman Roofing & Repair, L.L.C. (Coleman Roofing), Chris Yancy, and Pamela Yancy. For the following reasons, the judgment is reversed.
FACTS AND PROCEDURAL BACKGROUND
LWCC provided workers' compensation insurance to Coleman Roofing through a continuance annual policy bearing number 137760 with an effective date of October 22, 2010. The initial estimated premium amount was $59,027.00. However, the policy included a premium obligations endorsement, which provided that Coleman Roofing would allow LWCC to conduct an audit of its records related to the policy, and that the information developed by the audit would then be used to determine the final premium amount owed by Coleman Roofing to LWCC.
Accordingly, on November 21, 2011, LWCC audited the records of Coleman Roofing for purposes of determining the final premium amount owed. After the completion of LWCC's audit showed that an additional premium amount was purportedly owed, Coleman Roofing disputed and refused to pay in full the final premium amount as determined by LWCC's audit. Thereafter, on June 5, 2012, LWCC filed suit against Coleman Roofing, Chris Yancy, and Pamela Yancy[1] for the final unpaid premium amount of $128,088.40, plus legal interest, costs, and reasonable attorney's fees.[2]
Defendants filed an answer to the lawsuit, generally denying the allegations of the petition and disputing that additional premiums were owed to LWCC. Defendants specifically contended that LWCC's audit "mislabeled some of Coleman Roofing['s] subcontractors as performing roofing duties instead of their actual subcontracting duties" and that accordingly, LWCC had miscalculated the final premium.
On March 7, 2017, LWCC filed a motion for summary judgment, contending that its audit of Coleman Roofing's business records revealed that remunerations were paid by Coleman Roofing to subcontractors and/or employees that were not reported to LWCC, and that these remunerations were used in the calculation of the final premium, pursuant to the terms of the insurance contract.[3] LWCC asserted *21 that Coleman Roofing received the benefit of workers' compensation insurance coverage from LWCC for these subcontractors and/or employees, but failed to either pay the total premium owed for this coverage, or to provide certificates of insurance showing that these subcontractors and/or employees were covered by other workers' compensation insurance as required by the insurance contract. Accordingly, LWCC argued that no genuine issues of fact exist and defendants are liable to LWCC for the premium due for these subcontractors and/or employees in the amount of $128,088.40.
Defendants responded and objected to LWCC's motion for summary judgment, asserting, among other arguments, that Coleman Roofing never had any subcontractors, independent contractors, or employees other than those whose remunerations were previously reported to LWCC, and that LWCC cannot produce any evidence of unreported subcontractors and/or employees. Defendants also contended that the affidavits of two LWCC employees that were submitted by LWCC to support the motion for summary judgment should be disregarded as self-serving and lacking in evidence and veracity, as the affiants had no independent facts nor evidence to support the audit that they "verified" in their affidavits. Accordingly, defendants argued that summary judgment was inappropriate as material issues of fact exist as to whether or not Coleman Roofing had employees, subcontractors, or independent contractors other than those previously reported to LWCC, and for which Coleman Roofing had previously paid premiums.
Following argument, the trial court granted LWCC's motion for summary judgment, finding that defendants' argument and opposition evidence did not raise a "material issue." Accordingly, the trial court signed a written judgment on July 5, 2017, granting summary judgment in favor of LWCC for $128,088.40, plus legal interest, costs, and attorney's fees in the amount of twenty-five (25%) percent.
Defendants then filed the instant appeal from the July 5, 2017 judgment of the trial court, assigning the following as error:
(1) The trial court erred in granting summary judgment as genuine issues of material fact exist.
(2) The trial court erred in its determination of what constituted material facts.
(3) The trial court erred in granting summary judgment for the reason that it made credibility determinations as related to the truthfulness of the affidavits submitted by LWCC in support of the motion for summary judgment.
BURDEN OF PROOF
In determining whether summary judgment is appropriate, appellate courts review summary judgment de novo under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Furthermore, an appellate court asks the same questions as does the trial court in determining whether *22 summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. Louisiana Workers' Compensation Corp. v. Landry, 2011-1973 (La. App. 1st Cir. 5/2/12), 92 So.3d 1018, 1021, writ denied, 2012-1179 (La. 9/14/12), 99 So.3d 34.
The summary judgment procedure is expressly favored in the law and is designed to secure the just, speedy, and inexpensive determination of non-domestic civil actions. LSA-C.C.P. art. 966(A)(2). The purpose of a motion for summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. Hines v. Garrett, 2004-0806 (La. 6/25/04), 876 So.2d 764, 769 (per curiam ). After an adequate opportunity for discovery, summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(A)(3).
Despite the legislative mandate that summary judgments are now favored, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent's favor. Willis v. Medders, 2000-2507 (La. 12/8/00), 775 So.2d 1049, 1050 (per curiam ).
On a motion for summary judgment, the burden of proof is on the mover. If, however, the mover will not bear the burden of proof at trial on the matter that is before the court on the motion, the mover's burden on the motion does not require that all essential elements of the adverse party's claim, action, or defense be negated. Instead, the mover must point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, the adverse party must produce factual evidence sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. LSA-C.C.P. art. 966(D)(1).
In the instant case, LWCC is the mover, and thus, LWCC bears the initial burden of proof on the motion for summary judgment. Moreover, LWCC is also the party who will bear the burden of proving at trial its entitlement to additional premiums pursuant to the terms of the insurance contract that it seeks to enforce. Farmers Insurance Exchange v. Shows, 2014-1248 (La. App. 1st Cir. 6/5/15), 2015 WL 3545624 at *2 (unpublished) (finding the burden of proof is on the party seeking to enforce an agreement, or claiming rights under it).[4] Accordingly, if the supporting documents submitted by LWCC sufficiently resolve all material issues of fact, only then does the burden shift to defendants to present evidence showing that a material fact is still at issue. Neighbors Federal Credit Union v. Anderson, 2015-1020 (La. App. 1st Cir. 6/3/16), 196 So.3d 727, 734 (on a motion for summary judgment, it must first be determined that the documents presented by the moving party are sufficient to resolve all material issues of fact, and only if the documents are sufficient does the burden shift to the opposing party to present evidence showing that a material *23 fact is still at issue; also, only at this point may the opposing party no longer rest on the allegations contained in his pleadings).
ANALYSIS
In support of the motion for summary judgment, LWCC submitted: (1) a certified copy of the insurance policy; (2) the premium obligations endorsement; (3) the policy summary statement; (4) affidavits of two LWCC employees; (5) LWCC's November 21, 2011 premium audit report of Coleman Roofing; and (7) the deposition transcript of William McKernan, an employee of Coleman Roofing.
The November 21, 2011 premium audit report of Coleman Roofing was conducted by Loretta Singleton, a LWCC auditor. Notably absent from the record, however, is an affidavit by Ms. Singleton setting forth her findings and the reliability or basis of such, or the records supporting her findings. In support of the motion for summary judgment, LWCC did not submit Ms. Singleton's affidavit; rather, LWCC submitted the affidavits of Ms. May field, the assistant vice president of accounting for LWCC, and Mr. Whitehead, a forensic and compliance auditor for LWCC. LWCC contends that these are sufficient because Ms. Mayfield's affidavit is an "audit of correctness of account" and Mr. Whitehead's affidavit "attests to the veracity of the audit." As such, LWCC contends that these affidavits establish the accuracy of the audit, and likewise, that the affidavits resolve any issues of fact concerning the final premium amount owed by defendants to LWCC, as determined by its audit. However, supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. LSA-C.C.P. art. 967. Ms. Mayfield and Mr. Whitehead do not attest anywhere in their respective affidavits that they reviewed the business records of Coleman Roofing that were reviewed by Ms. Singleton during her audit of Coleman Roofing, and their affidavits are not supported with any such records. Cf. Regions Bank v. Louisiana Pipe & Steel Fabricators, LLC, 2011-0839 (La. App. 1st Cir. 12/21/11), 80 So.3d 1209, 1213 (finding bank's vice president's summary judgment affidavit sufficient under LSA-C.C.P. art. 967, where he is familiar with the subject account and the bank's business records, he testified based on his personal knowledge of the subject account and review of the records, and his testimony was supported by the very documents about which he testified). E.g. Capital One Bank (USA), NA v. Sanches, 13-0003 (La. App. 4th Cir. 6/12/13), 119 So.3d 870, 875-76 ; Delcambre v. Price, 99-0223 (La. App. 4th Cir. 3/24/99), 738 So.2d 593, 595-96.
Further, in support of the motion for summary judgment, LWCC did not submit the Coleman Roofing business records that were reviewed during the audit. Specifically, LWCC did not submit records, or any other evidence, concerning the purported unreported remunerations allegedly paid by Coleman Roofing to subcontractors and/or employees who were not covered by another workers' compensation policy.[5] Accordingly, *24 we are unable to find that Ms. Mayfield's and Mr. Whitehead's affidavits, without more, are sufficient to establish the veracity and correctness of the audit such that LWCC would be entitled to judgment as a matter of law.[6] Likewise, we are unable to find that these affidavits, and the audit to which they attest, resolve all issues of fact concerning whether or not the final premium amount alleged to be owed by Coleman Roofing to LWCC was correct.
As to the other documents submitted by LWCC in support of its motion for summary judgment, we likewise find that Mr. McKeman's deposition transcript does not resolve all material issues of fact. Specifically, Mr. McKernan testified that he did not know subcontractors Carlos Perez and Joel Pacheco, the two aforementioned subcontractors who are identified and "disputed" in the audit. LWCC also submitted the policy, the premium obligations endorsement, and the policy summary statement. However, these additional documents do not resolve the aforementioned material issues of fact. Accordingly, we conclude that LWCC did not meet its initial burden of proof on its motion for summary judgment
In sum, upon de novo review, we are unable to find that the motion, memorandum, and supporting documents, as submitted by LWCC, show that there is no remaining genuine issue of material fact or that LWCC is entitled to judgment as a matter of law. LSA-C.C.P, arts. 966(A)(3). Accordingly, we find that the trial court erred in granting summary judgment in favor of LWCC and in ruling that defendants owed the amount of $128,088.40, plus legal interest, costs, and attorney's fees, when there is no proper record basis for doing so,
CONCLUSION
Based on the above and foregoing reasons, the July 5, 2017 judgment of the trial court, granting summary judgment in favor of LWCC and against Coleman Roofing, Chris Yancy, and Pamela Yancy in the amount of $128,088.40, plus legal interests, costs, and twenty-five (25%) percent attorney's fees, is hereby reversed. Costs of this appeal are assessed to plaintiff/appellee, Louisiana Workers' Compensation Corporation.
REVERSED.

Chris Yancy and Pamela Yancy personally guaranteed all amounts owed by Coleman Roofing to LWCC.

The premium obligations endorsement provided that failure to pay the premium would constitute breach of the insurance contract and Coleman Roofing would pay damages associated with the breach, including reasonable attorney's fees (fixed at the greater of twenty-five (25%) of the unpaid premium or $500.00) and costs incurred in the collection of any unpaid premium amount.

Part 5-Premium, Section C" of the insurance policy provides:
Remuneration
Premium for each work classification is determined by multiplying a rate times a premium basis. Remuneration is the most common premium basis. This premium basis includes payroll and all other remuneration paid or payable during the policy period for the services of:
1. all your officers and employees engaged in work covered by this policy; and
2. all other persons engaged in work that could make us liable under Part One (Workers Compensation Insurance) of this policy. If you do not have payroll records for these persons, the contract price for their services and materials may be used as the premium basis. This paragraph 2 will not apply if you give us proof that the employers of these persons lawfully secured their workers compensation obligations.

Cf. Barfield v. Diamond Construction Incorporated, 51,291 (La. App. 2nd Cir 4/5/17), 217 So.3d 1211, 1217-18, writ denied, 2017-0751 (La. 9/15/17), 228 So.3d 1205 (after an audit and assessment by the Department of Revenue, the burden of proof shifted to the taxpayer pursuant to LSA-R.S. 13:5034, which specifically addresses the burden of proof in a case by the State against a taxpayer and provides that an affidavit by a tax collector shall be accepted as prima facie true and as constituting a prima facie case).

Even assuming arguendo that the affidavits presented had been based upon personal knowledge of the audit's contents, the accuracy of the audit is called into question by the audit itself, which contains internal inconsistencies. In particular, the existence of issues of fact regarding Coleman Roofing's subcontractors is evidenced by the audit report itself, as the audit report states, "[Coleman Roofing] stated that subcontractors Carlos Perez and Joel Pacheco are employees of adequately insured subcontractors (Moreno Construction and J & L Remodeling) and are covered by their workers comp. policy. [However,] [b]oth subs have been included in this audit."

The affidavits state that the audit report and premium amount are "true and correct" because "no information has been provided [to LWCC] evidencing the incorrectness." These statements are not sufficient to establish the veracity and correctness of the audit and premium amount. It is evident from the audit, on which the premium is based, that issues of fact existed at the time of the audit (see footnote 5). LWCC has the burden to prove that these issues of fact no longer exist and that the audit report and premium amount are correct. These conclusory statements in the affidavits attempted to switch the burden of proof to defendants.