STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2020 CA 0795

GWENDOLYN TAMMY HEMPHILL, INDIVIDUALLY, AND AS
THE NATURAL MOTHER OF NOAH HEMPHILL, AND PATRICIA
HEMPHILL, WIFE OF/AND MICHAEL HEMPHILL,
INDIVIDUALLY, AND ON BEHALF OF THE MINOR, NOAH
HEMPHILL

CHH
MRT by CHH

VERSUS

CHRISTA SMITH, WIFE OF/AND JULIUS J. SMITH AND
ST. TAMMANY PARISH HOSPITAL

*Consolidated with*

NO. 2020 CA 0796

GWENDOLYN TAMMY HEMPHILL, INDIVIDUALLY, AND AS
THE NATURAL MOTHER OF NOAH HEMPHILL, AND PATRICIA
HEMPHILL, WIFE OF/AND MICHAEL HEMPHILL,
INDIVIDUALLY, AND ON BEHALF OF THE MINOR, NOAH
HEMPHILL

VERSUS

CHRISTA SMITH, WIFE OF/AND JULIUS J. SMITH AND
ST. TAMMANY PARISH HOSPITAL

Wolfe, J. concurs by CHH

Judgment Rendered: JUL 2 2 2021

\* \* \* \* \*

On Appeal from the
22nd Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
Trial Court No. 200814129

Honorable Alan A. Zaunbrecher, Judge Presiding

\* \* \* \* \*

| | |
|---|---|
| Shawn C. Reed<br>Jonathan C. Pedersen<br>Shelby S. Talley<br>Jacques Bezou, Sr.<br>Jacques Bezou, Jr.<br>Sam Collett, III<br>Covington, LA | Attorneys for Plaintiffs-Appellants,<br>Patricia Hemphill individually and on<br>behalf of the minor, Noah Hemphill |
| Christine Voelkel<br>Mandeville, LA<br><br>Jacques Bezou, Sr.<br>Joseph A. Kott<br>Covington, LA | Attorneys for Plaintiffs-Appellees,<br>Gwendolyn Tammy Hemphill,<br>individually, and as the natural<br>mother of Noah Hemphill |
| Philip E. Reso<br>Thomas C. Cowan<br>Sheri S. Gilbert<br>Metairie, LA | Attorneys for Defendants-Appellees,<br>EmCare, Inc., EmCare Physicians<br>Services, Inc. and EmCare |
| Margaret H. Kern<br>Covington, LA | Attorney for Defendant-Appellee<br>St. Tammany Parish Hospital Service<br>District No. 1 |

\* \* \* \* \*

BEFORE: THERIOT, WOLFE, AND HESTER, JJ.

2

## HESTER, J.

Plaintiffs, Gwendolyn Tammy Hemphill, individually, and as the natural mother of Noah Hemphill, and Patricia Hemphill, wife of/and Michael Hemphill, individually, and on behalf of the minor, Noah Hemphill, appeal judgments granting St. Tammany Parish Hospital Service District No. 1's motion for summary judgment and EmCare, Inc., EmCare Physician Services, Inc., and EmCare Physician Providers, Inc.'s motion for summary judgment, thereby dismissing all claims of plaintiffs against the movers. For the reasons that follow, we reverse in part, and affirm in part.

### FACTUAL AND PROCEDURAL HISTORY

Patricia and her husband, Michael Hemphill,[1] are the grandparents of Noah Hemphill who were appointed custodians of Noah by order of the Bogalusa City Court and the Office of Community Services, State of Louisiana ("OCS"). The Hemphills ultimately adopted their grandson in 2007.

On November 7, 2005, Patricia placed Noah, who was two and a half years old, in the care of Christa and Julius Smith, who had cared for Noah and Noah's older brother four months prior. Christa was a registered nurse and worked for the Hemphills' home health agency, and Julius, Christa's husband, was a stay-at-home dad to the Smiths' three children. Only about an hour after being placed in the care of the Smiths on this particular day, Noah suffered a blunt force trauma to his head, resulting in severe and permanent injuries. Noah was transported to Bogalusa Charity Hospital and was unconscious and required intubation. Upon her arrival, Patricia immediately requested that Noah be transported to Children's Hospital in New Orleans.

---

[1] Michael Hemphill is now deceased.

Bogalusa Charity Hospital reported the suspected child abuse of Noah to the Bogalusa Police Department which, along with OCS, investigated Noah's injuries. During the course of the investigation, plaintiffs discovered that there was a potential previous incident of child abuse involving the Smiths and their niece, L.M.,[2] over a year earlier. While Julius was babysitting four-month-old L.M., the Smith's eighteen-month-old son either hit L.M. on the head with a toy or dropped a toy on L.M.'s head. After the injury, Julius called Katrina Mitchell, L.M.'s mother and Christa's sister. Katrina directed Julius to take L.M. to St. Tammany Parish Hospital ("STPH"), which was equipped to treat L.M. and was where Christa was working that day.[3]

On September 24, 2004, L.M. was treated at STPH for a head injury by Dr. Catherine Speights and was discharged the same day after a CT scan revealed that L.M. had a non-depressed occipital bone fracture with an associated scalp hematoma and no intracranial abnormality. Dr. Richard Coulon, a neurosurgeon from Children's Hospital, was contacted in connection with L.M.'s treatment at STPH, and Dr. Coulon recommended that L.M. be discharged home with neuro checks and a follow-up CT scan in four months. No investigation of L.M.'s injury was done by STPH and no report of suspected abuse was made to OCS. L.M. was discharged from STPH with instructions to follow up with L.M.'s treating physician in three days.

Plaintiffs filed the instant lawsuit, naming the Smiths and STPH as defendants.[4] Plaintiffs alleged that the failure of STPH and its employees to report suspected child abuse of L.M. to OCS permitted the Smiths to care for other children

---

[2] L.M. is a minor and not a party to this suit. L.M. will be referred to by her initials to preserve her anonymity. See Uniform Rules of Louisiana Courts of Appeal, Rule 5-2.

[3] Christa worked part-time in home health and also worked as a flex nurse for STPH. (0795:286).

[4] Plaintiffs later supplemented and amended the original petition four times, refining and adding numerous allegations against STPH.

and gave the Smiths the opportunity to abuse and cause injury to Noah. Plaintiffs assert that if STPH staff had handled L.M.'s case properly and reported the suspected abuse in accordance with Louisiana's mandatory reporting laws, then Noah would not have been a victim of Julius Smith in 2005.

Plaintiffs further alleged that STPH negligently failed to train its employees and staff on the mandatory reporting of child abuse when they had "cause to believe that a child's physical or mental health or welfare [was] endangered as a result of abuse or neglect" and establish procedures, protocols, and policies as required under Louisiana law. See La. Ch. Code art. 601, et seq. Additionally, it was alleged that the entire medical team handling L.M.'s treatment and care failed to obtain or document basic and necessary information in order to properly ascertain whether there was cause to believe that a child's physical or mental health or welfare was endangered as a result of abuse or neglect.

Plaintiffs also alleged that Christa, a nurse who was employed at STPH at the time of L.M.'s injury, exerted pressure or influence on the hospital staff to not report the suspected child abuse of her niece by her husband. It was argued that, at all times relevant, Christa was in the course and scope of her employment with STPH. As an employee of STPH on duty on the date of L.M.'s presentation to STPH, Christa had an affirmative duty to report L.M.'s injury to the proper state authorities for investigation of child abuse under the circumstances pursuant to Louisiana law. Therefore, plaintiffs maintained that STPH is vicariously liable for the affirmative, willful, and wonton acts of Christa in the handling of L.M.'s presentation to the emergency room at STPH and the circumstances surrounding the failure to report the suspected child abuse of L.M.

Defendants Christa and Julius Smith were dismissed from the suit on August 14, 2013, after effecting a compromise with plaintiffs. Five years later, plaintiffs added EmCare, Inc., EmCare Physician Services, Inc., and EmCare Physician

5

Providers, Inc. ("EmCare") as defendants pursuant to a supplemental and amending petition on May 15, 2017. Plaintiffs alleged that EmCare was liable for the actions and omissions causing damage to plaintiffs by virtue of its contract to provide physician staffing and/or other services to STPH's emergency department and was vicariously liable for the acts and omissions of its employees (Dr. Speights) who caused or contributed to the injuries sustained by plaintiffs.

On September 19, 2019, EmCare filed a motion for summary judgment seeking dismissal of plaintiffs' claims against it, citing three grounds therefor: (1) EmCare did not employ Dr. Speights and did not enter into a contract with STPH; (2) Dr. Speights owed Noah no legal duty; and (3) the Louisiana Children's Code does not provide for civil liability. In support, EmCare submitted numerous exhibits, which included deposition testimony of Christa Smith and Patricia Hemphill; testimony of Christa Smith, Patricia Hemphill, Katrina Mitchell, and Noah's treating pediatrician from Julius Smith's criminal trial; L.M.'s 2004 STPH medical records; and the emergency department services agreement between STPH and EmCare of Louisiana, Inc.

Thereafter, on November 14, 2019, STPH also filed a motion for summary judgment seeking the dismissal of plaintiffs' claims against it on the following grounds: (1) plaintiffs cannot meet their burden that STPH or Dr. Speights owed any duty to Noah to report the 2004 injury of L.M. (adopting the arguments raised by EmCare in its motion); (2) STPH did not owe a duty – statutory or general – to protect Noah, who was not seen or treated at STPH; and (3) STPH is not liable for any acts of Christa because she was not in the course and scope of her employment at the time of L.M.'s injury and was not employed by STPH at the time of Noah's injury. No exhibits were submitted in support of STPH's motion for summary judgment.

Plaintiffs opposed EmCare's motion for summary judgment and submitted exhibits, including depositions of Dr. Speights, STPH, Patricia Hemphill, and Dr. Coulon, as well as the criminal trial testimony of Katrina Mitchell. Plaintiffs later submitted a joint opposition to EmCare and STPH's motions for summary judgment, specifically addressing the duty owed to plaintiffs, and attached as exhibits the depositions of STPH and Patricia Hemphill, as well as multiple affidavits. A hearing was held on both motions on December 19, 2019. At the conclusion of the hearing, the trial court granted both motions for summary judgment. By judgments dated January 10 and 17, 2020, the trial court granted EmCare and STPH's motion for summary judgment, respectively, and dismissed STPH and EmCare from the action with prejudice. From these judgments plaintiffs devolutively appealed. After the appeals were lodged in this court, STPH moved to consolidate the appeals, indicating that the appeals concerned nearly identical issues and arguments, and this court granted the motion to consolidate.

**LEGAL PRECEPTS**

The purpose of summary judgment is to pierce the pleadings and to assess the proof in order to determine whether there is a genuine need for trial. **Louisiana Workers' Compensation Corp. v. B, B & C Associates, LLC**, 2017-1342 (La. App. 1st Cir. 4/9/18), 249 So.3d 18, 22. Appellate courts review summary judgments *de novo* and ask the same questions the trial court does in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. E.g., **Cabana Partners, LLC v. Citizens Bank & Trust Co.**, 2018-0133 (La. App. 1st Cir. 12/21/18), 269 So.3d 986, 990. Also see La. Code Civ. P. art. 966(A)(3).

Plaintiffs assert claims of negligence against EmCare and STPH and have the ultimate burden of proving the five elements of the duty-risk analysis, *i.e.*, (1) the defendant had a duty to conform his conduct to a specific standard (the duty

7

element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) the actual damages (the damages element). A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability. **Lemann v. Essen Lane Daiquiris, Inc.**, 2005-1095 (La. 3/10/06), 923 So.2d 627, 632-33.

On a motion for summary judgment, however, the initial burden of proof is on the mover. La. Code Civ. P. art. 966(D)(1). The mover can meet its burden by filing supporting documentary evidence consisting of pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions with its motion for summary judgment. La. Code Civ. P. art. 966(A)(4). The mover's supporting documents must prove the essential facts necessary to carry the mover's burden. Therefore, it must first be determined whether the supporting documents presented by the mover are sufficient to resolve all material fact issues. **Mercadel v. State through Department of Public Safety and Corrections**, 2018-0415 (La. App. 1st Cir. 5/15/19), 2019 WL 2234404, *2 (unpublished); **Horrell v. Alltmont**, 2019-0945 (La. App. 1st Cir. 7/31/20), 309 So.3d 754, 758.

Once the mover properly establishes the material facts by its supporting documents, the mover is not required to negate all of the essential elements of the adverse party's claims, actions, or defenses if he will not bear the burden of proof at trial. La. C.C.P. art. 966(D)(1); **Mercadel**, 2019 WL 2234404 at *3. Rather, the mover is only required to point out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. La. Code Civ. P. art. 966(D)(1). The burden then shifts to the non-moving party to produce

8

factual support, through the use of proper documentary evidence attached to its opposition, which establishes the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. **Mercadel**, 2019 WL 2234404 at *3; **Horrell**, 309 So.3d at 759 (citing La. Code Civ. P. art. 966(D)(1) and La. Code Civ. P. art. 966, comments—2015, comment (j)). If the non-moving party fails to produce sufficient factual support in its opposition which proves the existence of a genuine issue of material fact, article 966(D)(1) mandates the granting of the motion for summary judgment. **Mercadel**, 2019 WL 2234404 at *3.

The court may consider only those documents filed in support of or in opposition to the motion for summary judgment and shall consider any documents to which no objection is made. Any objection to a document shall be raised in a timely filed opposition or reply memorandum. The court shall consider all objections prior to rendering judgment and shall specifically state on the record or in writing which documents, if any, it held to be inadmissible or declined to consider. La. Code Civ. P. art. 966(D)(2); also see **Horrell**, 309 So.3d at 759.

**DISCUSSION**

EmCare's Motion for Summary Judgment

Plaintiffs raised numerous assignments of error with respect to the trial court's grant of the motion for summary judgment filed by EmCare, one of which was the failure of the trial court to recognize the duty of mandatory reporters, including Dr. Speights, to report cases of suspected child abuse in order to prevent future abuse by an abuser. While plaintiffs focus on the duty of Dr. Speights and the other mandatory reporters, the ultimate focus is to whom Dr. Speights owed the duty and whether the breach of the duty of a mandatory reporter in this case was the legal cause of the harm suffered by Noah.

Pursuant to La. Ch. Code art. 609(A)(1)(a), "[n]otwithstanding any claim of privileged communication, any mandatory reporter who has cause to believe that a

9

child's physical or mental health or welfare is endangered as a result of abuse or neglect ... shall report in accordance with Article 610." Louisiana Children's Code art. 603(17) identifies health practitioners as mandatory reporters and further defines a health practitioner as "any individual who provides healthcare services, including a physician, ... hospital staff member, ... [or] licensed nurse, ... who diagnoses, examines, or treats a child or his family." La. Ch. Code art. 603(17)(a). Abuse includes the infliction, attempted inflictions, or, as a result of inadequate supervision, the allowance of the infliction or attempted infliction of physical or mental injury upon the child by a parent or any other person which seriously endangers the physical, mental, or emotional health and safety of the child. La. Ch. Code art. 603(2)(a). Importantly, the purpose of the Children's Code is as follows:

> [T]o protect children whose physical or mental health and welfare is substantially at risk of harm by physical abuse, neglect, or exploitation and who may be further threatened by the conduct of others, by providing for the reporting of suspected cases of abuse, exploitation, or neglect of children; by providing for the investigation of such complaints; and by providing, if necessary, for the resolution of child in need of care proceedings in the courts. The proceedings shall be conducted expeditiously to avoid delays in achieving permanency for children. This Title is intended to provide the greatest possible protection as promptly as possible for such children. The health, safety, and best interest of the child shall be the paramount concern in all proceedings under this Title. This Title shall be construed in accordance with Article 102. This Title shall be administered and interpreted to avoid unnecessary interference with family privacy and trauma to the child, and yet, at the same time, authorize the protective and preventive intervention needed for the health, safety, and well-being of children.

La. Ch. Code art. 601.

In this case, plaintiffs maintain that EmCare is liable for the injuries of Noah through the acts of its employee, Dr. Speights, who failed to report suspected child abuse of L.M. in 2004 despite being a mandatory reporter and having sufficient cause to believe that L.M.'s physical health or welfare was endangered as a result of abuse or neglect. In its motion for summary judgment, EmCare argued that Dr. Speights did not have a duty to protect Noah, whom she never treated, from abuse and argued

10

that it would not be reasonable to expect Dr. Speights, when evaluating L.M. in 2004, to anticipate the abuse of an unidentified and unforeseen child over a year later in 2005. In granting EmCare's motion, the trial court ruled as follows:

> [T]he Louisiana Children's Code was intended to benefit the children of the State of Louisiana through mandatory reporting requirements, but it does not create or expand civil liabilities as suggested by the plaintiff in the petition. I believe that the claims here fail to complete the causal chain, the nexus, foreseeability, ease of association necessary to find liability on the part of the defendant.

The threshold issue in any duty-risk analysis is whether the defendant owed a duty to the plaintiff. Whether a duty is owed is a question of law, which involves a determination of whether the duty the defendant allegedly breached extends to the risk of harm suffered by the plaintiff. The determination of whether a duty exists as a result of the relationship between the parties must be made on a case by case basis. **Haynes Interests, LLC v. Garney Companies, Inc.**, 2019-0723 (La. App. 1st Cir. 2/26/21), ___ So.3d ___, ___, 2021 WL 753847, *7, <u>writ denied</u>, 2021-00451 (La. 5/25/21).

Pertinent to EmCare's motion for summary judgment, it must be determined whether Dr. Speights owed a duty to Noah or to all potential victims of child abuse at the hands of L.M.'s abuser. Generally, there is no legal duty to protect others from the criminal activities of third persons, but there are exceptions to this general rule.[5] **Haynes Interests,** ___ So.3d at ___, 2021 WL 753847 at *7. Under the Children's Code, persons identified as mandatory reporters, including emergency room physicians such as Dr. Speights, are legally required to report suspected child abuse. La. Ch. Code. arts. 603(17(a) and 609(A)(1)(a). Mandatory reporters, like Dr. Speights, can be found to owe a legal duty to a child who is believed to be the victim of child abuse. <u>See</u> **Parents of Minor Child v. Charlet**, 2013-2879 (La.

---

[5] We note that a positive outcome of reporting suspected child abuse cases is the investigation and prosecution of abusers; however, the focus of the Children's Code is the protection of the child and not the policing of abusers. <u>See</u> La. Ch. Code art. 601.

4/4/14), 135 So.3d 1177, 1180 (*per curiam*), cert. denied, 135 S.Ct. 1154, 190 L.Ed.2d 923 (2015). It can be reasonably assumed, for purposes of our analysis herein, that Dr. Speights owed a duty to L.M. to report suspected child abuse of L.M.[6]

Plaintiffs, however, argue that the duty to report under the Children's Code is intended to protect all children such that the duty to report extends beyond the initial child victim to all future, potential children who could be abused by the same abuser. Admittedly, the Children's Code is designed to protect all children from abuse, and a mandatory reporter, generally, owes a duty to all children to report actual instances of suspected child abuse. See La. Ch. Code art. 609; also see **Jackson v. Minden Police Department**, 52,489 (La. App. 2d Cir. 2/27/19), 266 So.3d 462, 466, writ denied, 2019-00697 (La. 9/6/19), 278 So.3d 373. However, the Children's Code, on its own, does not create a specific duty between a mandatory reporter and every possible or future victim of child abuse.

In order to avoid making a defendant an insurer of all persons against all harms, an examination of the relationship between the parties must be made on a case-by-case basis. See **Todd v. State through Department of Social Services, Office of Community Services**, 96-3090 (La. 9/9/97), 699 So.2d 35, 39. Coupled with this analysis is the determination of legal causation, which "requires a proximate relation between the actions of a defendant and the harm which occurs and such relation must be substantial in character." **Landers v. USIC Locating Services, Inc.**, 2020-0890 (La. App. 1st Cir. 4/26/21), ___ So.3d ___, ___, 2021 WL 1609247, *3 (quoting **Roberts v. Benoit**, 605 So.2d 1032, 1056 (La. 1991)). Because substandard conduct does not render the actor liable for all consequences

---

[6] According to L.M.'s medical records attached as exhibits to EmCare's motion for summary judgment, four-month-old L.M. was hit in the head with a toy by an eighteen-month-old child, which could have been the result of inadequate supervision and considered abuse pursuant to La Ch. Code 603(17)(a).

spiraling outward, until the end of time, the concept of proximate cause, or one of its functional equivalents, such as scope of the duty in duty-risk analysis, is necessary to truncate liability at some point. **Landers**, ___ So.3d at ___, 2021 WL 1609247 at *3 (citing **Roberts**, 605 So.2d at 1052).

In some instances a risk may not be found within the scope of a duty where the circumstances of that particular injury to that plaintiff could not be reasonably foreseen or anticipated, because there was no ease of association between that risk and the legal duty. Some risks that arise because of a defendant's conduct are not within the scope of the duty owed to a particular plaintiff simply because they are unforeseeable. The ease of association of the injury with the rule of conduct that is urged, however, is the proper inquiry. **Todd**, 699 So.2d at 39.

Plaintiffs allege that even though Noah was not a patient of STPH (or Dr. Speights), he was a foreseeable victim of abuse at the time that L.M. presented to the emergency department at STPH with a fractured skull, as L.M. was a child "routinely placed in the household of 'caretaker', Julius Smith, the owner, operator and/or 'caretaker' at a[n] institutional private residential daycare facility that was the same facility where the minor child at issue herein, Noah Hemphill, sustained serious bodily injury subsequently." However, when specifically asked whether Noah was routinely in the household and under the care of Julius in September 2004 when L.M. was injured, Patricia's multiple responses were less than clear.

According to the testimony of Katrina Mitchell, L.M.'s mother, Julius Smith began watching L.M. when she was two weeks old and continued watching L.M. until she was about a year and a half old (around March of 2005). Over nine months after L.M.'s injury, Noah and his older brother were first watched by the Smiths for

13

a week in July of 2005 while Patricia and her husband were out of town.[7] According to Patricia's testimony, Christa volunteered to watch Noah and his older brother and described their relationship at the time as follows: "She worked at the office, and I thought we had a good relationship ... an employee-employer relationship. We didn't socialize or anything like that. But she was a good employee."

However, plaintiffs allege that Noah's injuries in November of 2005 "would have been prevented" or "could have been avoided" had the suspected abuse of L.M. in September of 2004 been reported. In fact, Patricia testified that it was her belief that had the suspected abuse of L.M. been reported, OCS would have performed an investigation and she would have been contacted because she was Christa's employer in September of 2004 – not because Noah was being cared for by Julius at that time. It was also her assumption that she would have known about an investigation because they are in a "small community, people talk." Patricia further testified that it would not have mattered whether the investigation validated the allegation of abuse or not, she "would have never let Noah in their custody" if she knew that they had been investigated by OCS.

Notably, while the question of cause-in-fact involves a factual determination, the determination of legal cause involves a purely legal question. **Todd**, 699 So.2d at 39. For the purpose of a legal cause determination, we can assume a breach of duty which is the cause-in-fact of the plaintiff's damages. **Landers**, ___ So.3d at ___, 2021 WL 1609247 at *3. Accordingly, we can assume a breach of a duty – the failure of Dr. Speights to report the suspected child abuse of L.M. on September 24, 2004 – and we can further assume that this breach was the cause-in-fact of plaintiffs' damages – Noah's injuries would not have happened but-for Dr. Speights failure to

---

[7] It is noted that while Noah was in the care of the Smiths in July of 2005, Christa informed Patricia that Noah had fallen off the bed. Upon her return, Patricia noticed that Noah had black eyes and his forehead was bruised.

report the suspected child abuse of L.M. – for the purposes of legal causation. See **Landers**, ___ So.3d at ___, 2021 WL 1609247 at *3. However, it is not enough to say that if Dr. Speights had reported the suspected abuse of L.M., Noah would never have been injured. There must be something more; there must be a closer connection between the act of a defendant and the injury of the plaintiff. See **Todd**, 699 So.2d at 39.

In order to have legal causation (a necessary element of the duty-risk analysis), there must still be a proximate and substantial relation between the actions of the defendant and the harm which occurs. See **Landers**, ___ So.3d at ___, 2021 WL 1609247 at *3. Therefore, the appropriate question is whether the failure of Dr. Speights to report the suspected abuse of L.M. in September of 2004 is proximately and substantially related to Noah's abuse and injury in November of 2005. Based on our *de novo* review of the facts of this case, we agree with the trial court's conclusion that the claims asserted by plaintiffs fail to complete the causal chain, the nexus, foreseeability, and ease of association necessary to find liability on the part of EmCare through the actions of Dr. Speights.

While it is possible that Dr. Speights could have owed a duty to Noah under certain circumstances, plaintiffs failed to show that they could establish a specific duty owed to Noah by Dr. Speights at the time of L.M.'s injury in September 2004. More importantly, plaintiffs did not show that EmCare was not entitled to judgment as a matter of law with respect to legal cause. As observed by this court in **Paul v. Louisiana State Employees' Group Benefit Program**, 1999-0897 (La. App. 1st Cir. 5/12/00), 762 So.2d 136, 143, whether phrased in terms of scope of duty or legal cause or proximate cause, it can be useful to consider whether "too much else has intervened—time, space, people, and bizarreness." There are simply too many uncertainties and assumptions that must be made as to whether the reporting of suspected abuse of L.M. would have prevented Noah's devastating injuries over one

15

year later; whether, if reported, Patricia would have even known that Julius was suspected of child abuse of his niece, L.M.; and whether Patricia would have left Noah in the care of Julius in July of 2005 and November of 2005. The connection between the failure to report suspected child abuse of L.M. in September of 2005 and Noah's injuries in November of 2005 is too attenuated to support a finding of legal cause in this case.

Under our *de novo* review of the record, we find that EmCare is entitled to summary judgment as a matter of law. Therefore, plaintiffs' assignment of error regarding duty is without merit, and we pretermit all other issues raised by plaintiffs.

STPH's Motion for Summary Judgment

Plaintiffs submit that the trial court erred in granting STPH's motion for summary judgment, as STPH failed to submit any supporting documentation with its motion. We find merit in this assignment of error.

As the mover, STPH bore the initial burden on the motion for summary judgment but failed to submit any documents to prove the essential facts necessary to carry its burden of proof. STPH acknowledges that no documentation was submitted but argues that the relevant material facts submitted in its motion were not genuinely disputed by plaintiffs:

(1)     L.M. Mitchell was treated in the STPH emergency department in September of 2004 for a non-displaced skull fracture;

(2)     Noah Hemphill was never seen or treated at STPH, or any of its remote campuses or facilities;

(3)     Noah Hemphill was injured in November of 2005;

(4)     Christa Smith was not employed by STPH at the time of Noah Hemphill's injury in 2005; and

(5)     Any actions by Christa Smith to impede or prevent investigation of a child injured while in the care of her husband Julius Smith were motivated purely by her personal interest.

16

Nevertheless, STPH failed to cite to or reply upon any exhibits in its motion to establish that these facts were not genuinely in dispute. See Louisiana District Court Rule 9.10(a) (requiring that a memorandum in support of a motion for summary judgment contain a list of the material facts not genuinely disputed and a reference to the document proving each such fact). Without the appropriate supporting documentation in the record, there is nothing for this court to review. While former La. Code Civ. P. art 966(B)(2) permitted summary judgment to be rendered in the mover's favor if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with supporting affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law," there is no provision in the current article 966 which would allow a party to support or oppose factual issues without proper documentation. See **Horrell**, 309 So.3d at 761.

Failing to submit even the petitions filed by plaintiffs, STPH could not carry its initial burden of proof on its motion for summary judgment. See **Horrell**, 309 So.3d at 758. Consequently, under our *de novo* review, we are constrained to find that the trial court erred in granting STPH's unsupported motion for summary judgment and in dismissing plaintiffs' claims against STPH with prejudice.

## CONCLUSION

For the foregoing reasons, we affirm the January 10, 2020 judgment of the trial court granting EmCare, Inc., EmCare Physician Services, Inc., and EmCare Physician Providers, Inc.'s motion for summary judgment and dismissing all of plaintiffs' claims against EmCare, Inc., EmCare Physician Services, Inc., and EmCare Physician Providers, Inc., with prejudice. We reverse the trial court's January 17, 2020 judgment, which granted St. Tammany Parish Hospital Service District No. 1's motion for summary judgment and dismissed plaintiffs' claims against St. Tammany Parish Hospital Service District No. 1, with prejudice. The

17

costs of the appeal from the January 17, 2020 judgment in the amount of $1,815.86 are assessed to St. Tammany Parish Hospital Service District No. 1. The costs of the appeal from the January 10, 2020 judgment in the amount of $4,199.85 are to be borne by plaintiffs, Gwendolyn Tammy Hemphill, Individually, and as the Natural Mother of Noah Hemphill, and Patricia Hemphill, Wife of/and Michael Hemphill, Individually, and on Behalf of the Minor, Noah Hemphill.

**JANUARY 10, 2020 JUDGMENT AFFIRMED.**

**JANUARY 17, 2020 JUDGMENT REVERSED.**